This was an appeal from the judgment of the District Court of Richmond, reversing an order of Goochland County Court.
The following were the proceedings in the County Court.
On Monday, the 20th April, 1801, the Court directed the overseers of the poor of their County to send to the City of Richmond for Billy and Jesse Cooper, two free nonc> or\1 i«Vi n hQavi Inr +M atM boj's of colour, who had been by them bound to Samuel Couch, late of the said County, deceased, and were stated to be then in possession of Ann Couch, his widow. — On the 15th of June, 1801, it was ordered that the said boys be bound ; the said Jesse to Charles Hopkins, and Billy to Robert Hyde Saunders. Ata Court held July 20, 1801, a rule was made against Saunders and Hopkins, to shew cause at the ensuing Court, why the order directing the said boys to be bound to them should not be rescinded. — At August Term, the Court directed the said order to be rescinded, and the indentures of apprenticeship to be cancelled, “because the said Billy and Jesse had been removed out of the said County more than twelve months before the time of making the order i for binding them to *the said Saunders and Hopkins;” whereupon the said Saunders and Hopkins appealed. made the 18th of August was erroneous; being of opinion “that the power of the said County Court to order the said appel-lees to be bound as aforesaid was not taken away by their removal from the County of Goochland.”
Erom this judgment an appeal was taken to this Court.
The record stated (although Billy and Jesse were under the age of twenty-one years, and no assignment of counsel to them as paupers was mentioned) that they appeared in the County Court by counsel, and that they prayed the appeal from the District Court by their attorney.
The Attorney General, for the appellants, contended, that the law did not allow the appeal from the County Court; and that, if it did, the order of the 18th of August was right, and ought not to have been reversed.
In support of the first position, he inferred from the language of the law giving jurisdiction to the County Courts on the subject of apprentices, (a) that such jurisdiction was intended to be final. He observed that appealed are mere creatures of the legislature and not demandable of common right; that, therefore, an express act of Assembly is necessary to authorise an appeal; and that none such existed in the present case; the provision, concerning appeals to the Court of Appeals, (b) merely referring to that, on the subject of appeals from the County to the District Courts;(c) and the latter saying nothing about apprentices. It allows, indeed, an appeal on behalf of any persons í / . . . . . .7 . . . \ “thinking themselves aggrieved by the judgment or sentence of a County Court, in any action, suit, or contest whatsoever, where the debt or damages, or other thing recoverable or claimed in such suit, exclusive of the costs, shall be of the value of one hundred dollars,” &c. But the reference to the value of the thing in controversy precludes its application to this case, in which the contest is not about a thing the value of which can be estimated.
The District Court decided, that the order
In maintaining the second point, he insisted that the County Court of Goochland had no right to direct the overseers of the poor to send'for those orphans to the County of Henrico, which was out of the limits of their jurisdiction; that, having resided more than twelve months in Henrico, they had gained a legal settlement there, (d) and could not be removed to Goochland, by order of the Court of that County, without their consent, though they *might have returned thither of their own ac *188 cord; that proceedings of tjiis sort being summary, and out of the ordinary course of the common law, the court should, have spread on the record such facts and statements as were necessary to shew that they had acted regularly; and that nothing appeared on the record to authorise the orders of the 20th of April and ISth of June; that, therefore, the court had acted correctly in rescinding those orders by that of the 18th of August. (1)
It is true, that as a judicial tribunal, a County Court, at a subsequent term, cannot rescind its own order, except by a writ of error coram nobis; but County Courts are not only judicial bodies but bodies of police, and, as such, have extensive powers. In certain cases they have legislative authority, and are fully empowered to superintend all matters relative to the poor, and to apprentices:(a) even to rescind their indentures, and transfer them to other masters.
He moreover observed, that, if the District Court had been right in reversing the order of the 18th of August, it should also have reverted the two preceding orders, and remanded the case for new proceedings therein; because, if several orders are erroneous, the Court ought not to stop at the last, but to reverse the whole of them.
Warden (for the appellee, Charles Hopkins) observed, that Robert H. Saunders was said to have consented that the indenture whereby Billy Cooper was bound to him, should be vacated; but as a friend to justice, submitted it to the consideration of the Court, whether Saunders was not still bound to perform the covenants made on his part in the indenture.
He contended, 1. That the indentures which bound the orphans to Samuel Couch became void by his death, and did not enure to his representatives: 2. That, when Anne Couch, his sole representative, removed them from Goochland to the City of Richmond, her act, in so doing, was tortious: 3. That the obligation of the County Court of Goochland to provide for their maintenance and education, continued after that removal, and justified it in reclaiming them, and binding them out, under its order, of the 15th day of June, 1801; and, 4. that its order *of the 18th of August was erroneous, and that of the District Court, reversing the same, was correct.
He denied, that the County Court could rescind the act of the overseers of the poor, or destroy the indentures; and asked if Saunders and Hopkins had not an exclusive right to the services of these orphans, according to the indentures? He said, the order by which they were bound to them, was for the benefit of the orphans, and the Court, hy rescinding it, acted for their destruction. — Admitting that order to have been erroneous, the Court ought not, because itself had done wrong, to have injured them by destroying covenants made for their advantage. He said too, that as Billy and Jesse Cooper were infants, it was impossible, under the circumstances of this case, that counsel could have been heard on their behalf. Mrs. Anne Couch was the person, on whose behalf the motion was actually made, and who had now taken the appeal from the District Court. By affirming the judgment of that Court, a benefit will be conferred on those who are called appellants.
With respect to the right of appeal from the County Court, he insisted, that the County Court had no exclusive jurisdiction, where the rights of persons are affected; except where their decision is to be final, by some express law. Are not the rights of persons affected here? Is not the master aggrieved by the order of the Court rescinding its former order? and if aggrieved, has he not a right to appeal? Shall a man have a right to appeal because he might lose thirty pounds, and shall he not have it, when his apprentice is taken from him, by whose services he might get a hundred?
Besides, if there was no right of appeal to the District Court, the present appellants had no right to appeal to this Court; for this Court has no more jurisdiction on this subject, than the District Court has.
The Attorney General, in reply.
Mr. Warden has gone into a great deal of secret history of this case. I shall not follow his example. I admit it does not appear at whose motion any of the orders were made; but this objection applies as much in favour of the appellants as against them.
As to the removal of the apprentices to Henrico, he cannot contend, that a man is to be stationary because he has taken an apprentice. There is nothing in the, law to ^compel him to remain in the County. The objection to the order of the 18th of August, on the ground of injury to the orphans, is equally unsupported. It does not appear that either Saunders or Hopkins could teach them a trade. If we are to travel out of the record, Saunders is a man of large fortune and no tradesman. But that the judgment is a bad one is no argument to prove the right of appeal. We are asked by Mr. Warden, “shall a man have an appeal when the sum in controversy is only thirty pounds, and shall he not have it in this case?” This is an argument which ought to be addressed to the Legislature, not to the Court. It would prove, that even in criminal cases, there ought to be an appeal.
But our having appealed is urged against us. We appealed not from the County Court, but the District Court; and this on the grortnd that the latter had assumed a jurisdiction to which it was not entitled.
The Rev. Code, 1 vol., p. 173, c. 95, sect. 11, which directs an orphan to be bound as an apprentice, ‘ ‘ by order of the court of the County or Corporation in which he or she resides,” is decisive to shew that the County Court of Goochland had no right to send for the appellants from the City of Richmond for the purpose of binding them out; especially as their residence therein for twelve months had gained them a legal settlement, *189 according to the Rev. Code, p. 186, c. 102, sect. 35.
JUDGE TUCKER-
The provision in that clause of the law is merely negative; — “that no person shall be accounted an inhabitant, so as to have gained a legal settlement, until such person shall have been actually resident in the County, wherein he shall claim a legal settlement, for the space of one whole year.”
Warden. The “County where a person resides” signifies the County where he most commonly has resided. The orphans here were not brought to Henrico with their own consent.
A person may gain a settlement by residence for twelve months; but, where brought into a County without his own consent, and so retained there, he cannot be considered as settled. The Justices of Henrico could not have considered themselves required to act upon the case, as these orphans were maintained in the famils' of Mrs. Couch, and their right to freedom was unknown to them.
October 7.
Mr. Warden, at the request of the Court, spoke more particularly to the point, whether an appeal could be taken from the order of the County Court; — but previously observed, (on the other points in the cause,) that the removal of the orphans from Goochland was compulsory and illegal; that the record stated, they had been removed, not that “they had removed themselves;” that the law directing the indentures of apprentices to be lodged with the clerk of the court by whose order they are bound, (a) shews that they ought not to be removed from the county; that, therefore, the Court of Goochland County had a right to send for and bind them out again.
On the question concerning the right of appeal, he argued from the words of the act establishing the General Court, (b) that the jurisdiction of that Court originally was general over all controversies at common law which were brought before it by any legal means; and contended, that when the powers of the General Court were distributed, the same extensive jurisdiction was given to the District Courts within the limits of their several districts, (c)
The omission to mention the case ot apprentices in the several laws allowing appeals is no argument against the right of appeal. Suppose a person who had been engaged to build a bridge or a court-house had brought his timber to the place, and the Court were then to rescind the order for building the bridge or court-house, would there be no remedy by appeal? — Yet bridges and court-houses are not mentioned in any of those laws.
He contended that restraining the right of appeal, where a man has sustained an injury even for a penny is not correct; and mentioned the case in England of a dispute concerning the copyright of Thompson’s Seasons, where the damages were only forty shillings yet an appeal was allowed, though, perhaps, there was no law in that country mentioning such'a case.
He cited the law concerning the Court of Appeals(d) to shew that the right of appeal from the District Courts to this Court was to be exercised in the same manner as from the County to the District Courts; and insisted that, in both cases, an appeal was to be allowed wherever an injury had been sustained; that, in this case, freedom was in question; a contract had been entered into, which was obligatory on both parties, and yet had been rescinded by the County Court. In speaking of the right of appeal, the several laws used the potential ar-tide “may,” but no negative * words; —from which he inferred that, in all cases coming within the like reason, though not expressly mentioned, appeal ought to be allowed; for it would be abhorrent to every principle of liberty to establish an inferior Court as a Court of supreme and absolute jurisdiction over the rights of the citizens.
Curia advisare vult.
Friday, October 16. The Judges delivered their opinions.
JUDGE TUCKER,
after stating the case, made the following observations: The right of appealing from the judgment or proceedings of a Court of record, being unknown to the common law, must depend upon the statutes which allow it in certain cases.
The appellate jurisdiction of the District Courts is thus limited by the law of Virginia, 1794, c. 66, sect. 53, [Rev. Code, 1 vol., p. 82.] ‘ ‘Where any person or persons, body politic or corporate, shall think themselves aggrieved by the judgment or sentence of any County Court, or Court of Hustings, in any action, suit, or contest whatsoever, where the debt or damages, or other thing recovered or claimed in such suit, exclusive of the costs, shall be of the value of 100 dollars, or 3,000 pounds of tobacco, or upwards, or where the title or bounds of lands shall be drawn in question, or the contest shall be concerning mills, roads, the probat of wills, or certificates for obtaining administration, such person, &c. may enter an appeal to the next District Court.”
It requires but slender talents, or discernment, to discover that orders lor binding out apprentices, or for rescinding their indentures are not comprehended in this clause; nor has any other statute been pointed out which supplies the omission.
An appeal from the order of the County Court, therefore, did not lie in this case; and since it did not, the District Court could not obtain jurisdiction of the case in this mode, any more than it could obtain jurisdiction in the case of an appeal from a judgment at common law, where the debt or damages might be under 100 dollars; although it might, without question, obtain jurisdiction in such a case, by a writ of error, or of supersedeas, if the debt or damages should exceed 33 dollars 33 cents.
Mr. Warden, however, complains heavily of the doctrine, that no remedy can be had against the erroneous or x'even arbitrary proceedings of a County Court in cases of this nature. But, I ap *190 prehend, it does not necessarily follow that such proceedings cannot be re-examined or reversed in a superior Court, because the legislature have not granted an appeal. A writ of certiorari "lies at common law to examine and affirm or reverse proceedings and judgments in inferior Courts: and, for the purposes of removing not only legal but likewise equitable proceedings, it lies from the High Court of Chancery in England. It also lies from the Court of King’s Bench in England to all inferior Courts unless expressly exempted by the words of a statute, (a) I have always supposed that the General Court, as originally constituted (Oct. 1777, c. 17), in conformity with the apparent intention of the Constitution, possessed every power, jurisdiction, and authority, that a Court of common law could possess, except in original suits of less value than ten pounds, and appeals under the same amount. The clause defining its. jurisdiction is as comprehensive as words can make it. It declares that, “it shall be general over all persons, and in all causes, matters, and things at common law, whether brought before them by original process, by appeal from any inferior Court, habeas corpus, certiorari, writ of error, supersedeas, mandamus, or by any other legal ways and means.” — Then follows a proviso, that no person shall sue .out original process for the trial of an3r matter or thing in the General Court, of less value than ten pounds, except in certain enumerated cases, on penalty of being nonsuited, and having his suit dismissed with costs. — In inquiring into its powers we are to look into the proviso, for an exception to them; and, if we find no exception, there can be no doubt of the power, unless it can be expressly taken away or limited by some other clause. If these general powers be not transferred to the District Courts, within their respective districts, they must still remain with the General Court, under the third section of the act of 1792, (b) for it certainly was not the intention of the Legislature to extinguish them altogether. If this opinion be correct, a remedy still lies open to persons aggrieved in cases of this sort, though not by appeal: but whether it ought to be pursued in the General Court, or in the District Court, is a point upon which I mean not to offer an opinion. — I have merely thrown out these hints by way of answer to the complaints of the counsel employed on behalf of the gentlemen who conceive' themselves ^aggrieved by the proceedings of the County Court. But have this Court the power to correct the error of the District Court in sustaining its jurisdiction over the cause, when brought before them in this unauthorised and illegal manner? This must depend upon the statute which constitutes this Court, and describes and limits its jurisdiction, (c)
The 14th section of that act declares that “appeals, writs of error and supersedeas, may be granted, heard and determined by the Court of Appeals to and from any final decree or judgment of the High Court of Chancery, General Court, and District Courts, in the same manner and on the same principles, as appeals, writs of error and supersedeas, are to be granted, heard, and determined by the High Court of Chancery, and District Courts to and from any final judgment or decree of a County, City, or Borough Court.”
What is meant by this declaration, that appeals to this Court from the District Courts shall be granted on the same principles as appeals to those Courts may be granted from the County Courts? I understand it as referring us to the act which grant appeals from those Courts, for the several cases, in which appeals may be granted to this Court. And if we do. not find that an appeal in any given case does lie from the County Court to the District Court, neither can an appeal lie from thence to this Court.
Let us suppose a judgment at common law rendered against a man in a County Court for a debt of 99 dollars, exclusive of costs, and that that Court should allow an appeal to the District Court, and, upon the affirmance thereof in that Court, the defendant were to appeal to this Court — Could this Court take cognizance of the case? I apprehend not — for the jurisdiction of this Court in such a case is expressly limited to judgments to the amount of 100 dollars, exclusive of costs. What then must this Court do? Shall it assume jurisdiction itself, for the purpose of correcting the error of the District Court in assuming jurisdiction where it hath none? or shall the appeal be dismissed for want of jurisdiction? The latter course was adopted in the case of Hepburn v. Lewis, (d) Although the damages laid in the plaintiff's declaration were SOI. yet as he obtained a verdict for less than 301. from the judgment on which he appealed, this Court declared his appeal ought not to have been allowed, and dismissed it. So, in the case of Bedinger v. the Commonwealth, (e) and several subsequent cases of a similar nature, the Court ^dismissed the appeals, because it had not jurisdiction. Now, if the District Court had not jurisdiction upon an appeal in this case, and if appeals from the District Courts are to be granted upon the same principles as from the County Courts, how can this Court have jurisdiction? For, the foundation failing, the superstructure, I apprehend, must do so. Suppose this had been a criminal prosecution in the County Court, and a fine of 100 dollars had been assessed, and, upon an appeal to the District Court, the judgment had been affirmed; could this Court have done more than dismiss the appeal, (as in Bedinger’s case,) if the District Court had allowed one to be entered? I apprehend not; and I cannot distinguish between the principle in the case supposed, and that now before us.
Being of opinion that we have no jurisdiction of this case, I decline entering into the merits of it, and only give ipy opinion that the appeal should be dismissed._
*191 JUDGE) FILMING.
The County and Corporation Courts, having exclusive jurisdiction, in the first instance, respecting the care of, and binding out, poor orphans, and of hearing complaints between apprentices and their masters and mistresses, have power to vary and rescind their orders, with respect to them from time to time, at their discretion, as circumstances rnay require ; and no appeal lies from any order made by such Courts on those subjects: and any person, thinking him or herself aggrieved by such order, may pursue another mode of redress, as pointed out by the Judge who proceeded me. The County Court of Goochland therefore erred in allowing an appeal from their order of the 18th of August, 1801; and there is error in the District Court, in taking cognizance of the case, which that Court ought to have dismissed for want of jurisdiction. I am therefore of opinion (without considering the merits of the case) that the judgment of the District Court ought to be reversed. If, instead of reversing the judgment, this appeal should now be dismissed, the order of Goochland Court, of the 18th of August, 1801, would remain reversed by the judgment of a Court that had no jurisdiction of the case.
The case of Bedinger and others v. The Commonwealth, has been mentioned as similar to the one now before us; but to me they appear essentially different. That was a criminal prosecution for bribery and corruption, tried in the District Court of Winchester, in which there was a judgment against the defendants, who appealed to this Court, K'which, for want of jurisdiction, dismissed the appeal, without inquiring into the merits of the case; leaving in force the judgment rendered by a Court that had competent and final jurisdiction of the cause.

 Rev. Code, 1 vol., p. 174, c. 95, s. 15.

 Rev. Code, 1 vol., p. 62, c. 63. s. 14.

 Rev. Code, 1 vol., p. 82, c. 66, s. 53.

 Rev. Code, 1 vol., p. 186, c. 102, s. 35.

 Judge Tucks®, in tlie course of tlie argument, observed, that the order of the 20th of July (which led to that of the 18th of August) was also irregular, as no person was stated on whose motion it was made. The apprentices ought to have been personally before the Court.- — Note in Original Edition.

 Rev. Code, 1 vol., p. 174, c. 95, s. 15.

 Rev. Co Re, 1 vol., p. 173, c. 95, sect. 11.

 Sessions Acts. Oct. 1777, c. 17, sect. 2.

 Rev. Code, 1 vol., p. 74, c. 66, sect. 6, and ib. p. 92, c. 67, sect. 65, and lb. p. 82, c. 66, sect. 53.

Rev. Code, p. 62, c. 63, sect. 14.

 See Gwyllim’s Bac. Abr. 559,561; 2 Burr. 1042' Rexv. Morley & others, 1 1.(1. Raym. 580; Rex v, Inhabitants of-in Glamorganshire.

 L. V.edit. 1794, o. 65, p.,70.

 c) L. V. edit. 1794, c. 63, Rev. Code, vol. 1, p. 60.

 2 Call, 498.

 3 Call, 461.